E. R. Squibb & Sons, Inc. *v.* United States

· Court No. 73–9–02547

(Dated October 2ʋ, 1975)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.

*Rex E. Lee,* Assistant Attorney General (*Jerry P. Wiskin,* trial attorney), for the defendant.

Newman, Judge: Plaintiff has moved for summary judgment pursuant to rule 8.2 of this court; and defendant has cross-moved for summary judgment pursuant to said rule. The parties have agreed that there is no genuine issue as to any material fact.

For the reasons set forth herein the cross-motions are denied, but without prejudice.

The merchandise in issue is described on the invoice as "Broxodent devices (electric toothbrushes), 110 V/60 Hz, Model D–11". These articles were imported from Switzerland at the port of New York in 1970, and were assessed with duty by the regional commissioner at the rate of 0.56¢ each, plus 11.5 per centum ad valorem under the provision for "Tooth brushes" in item 750.40 of the Tariff Schedules of the United States, as modified by T.D. 68–9.

Plaintiff claims that the importation should have been assessed with duty at the rate of 8 per centum ad valorem pursuant to the provision in item 688.40, TSUS, as modified by T.D. 68–9, for "Electrical articles, and electrical parts of articles, not specially provided for".

In its complaint, plaintiff also alternatively claims under the provision in item 683.32 for electro-mechanical appliances, which were dutiable at the rate of 8 per centum ad valorem. However, in its brief plaintiff receded from that claim, and requested reliquidation only under item 688.40. In these circumstances, the claim under item 683.32 is deemed abandoned.

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 8, Subpart A:

Other brooms and brushes:

750.40       Tooth brushes_____    0.56¢ each
                                                    +11.5%
                                                  ad val.[1]

Claimed under:

Schedule 6, Part 5:

688.40      Electrical articles, and electrical parts of articles, not specially provided for_____   8% ad val.[1]

The motion papers disclose the following undisputed facts:

The imported article is a power unit for plaintiff's "Broxodent" electric toothbrush. Such power unit consists of a case containing an electric motor, an electric cord, a switch for turning the motor on and off, and a component designed to hold a brush. However, brushes were not included in the importation. The brush portion of the Broxodent electric toothbrush is not permanently affixed to the power unit, but rather is replaceable and interchangeable with other brushes designed to be affixed to the power unit. The brush component comprises approximately one percent of the value of the entire Broxodent electric toothbrush, and may be purchased at retail separately from the power unit.

Defendant contends that the power units, without brushes, are "unfinished" toothbrushes, and thus were properly classified under item 750.40 pursuant to General Interpretative Rule 10(h).[2]

Plaintiff, on the other hand, argues that the power units alone cannot be classified as "unfinished" toothbrushes pursuant to rule 10(h) because the brush components (which were not included in the importation) are essential parts of complete Broxodent electric toothbrushes. Further, plaintiff urges that the power units are merely "parts" of electric toothbrushes, which are not covered by item 750.40,[3] and such parts (which are concededly electrical) are properly classifiable under item 688.40.

Defendant disputes that the absent brushes are essential parts of complete electric toothbrushes and characterizes the brush components as "at best, *de minimis*" and as "mere accessories". Hence,

---

[1] Rates of duty modified by Presidential Proclamation 3822, 82 Stat. 1455, effective during calendar year 1970.

[2] General Interpretative Rule 10(h) provides: "(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished".

[3] Item 750.40 contains no provision for "parts" of toothbrushes.

defendant's position is that the power units alone are substantially complete (viz., unfinished) electric toothbrushes. Additionally, defendant insists that the power units are "machines" or "parts of a particular machine or apparatus", and therefore are excluded from item 688.40 by virtue of the legislative intent expressed in the explanatory notes in the *Tariff Classification Study* (November 15, 1960), schedule 6, page 308.

Preliminary to consideration of the issues, it should be pointed out by way of background that the classification of *complete* electric toothbrushes has been before the court in two prior cases: *Kaysons Import Corp.* v. *United States,* 56 Cust. Ct. 146, C.D. 2622 (1966); and *Thalson Co.* v. *United States,* 64 Cust. Ct. 418, C.D. 4011 (1970). But neither holding is controlling.

In *Kaysons Import Corp.,* electric toothbrushes were held to be properly classified by the Government under the provision in paragraph 1506 of the Tariff Act of 1930, as modified, for toothbrushes, as against plaintiff's claim that they were properly dutiable under paragraph 353, as modified, as articles having as an essential feature an electrical element or device.

In *Thalson Co.,* electric toothbrushes imported in 1963 were held to be properly dutiable under item 683.32, TSUS as electro-mechanical appliances, with self-contained electric motors, of the type used in the household, rather than under the provision in item 750.40, TSUS for toothbrushes, since at the time of importation (1963) mechanical brushes were expressly excluded from item 750.40 by virtue of headnote 1(i) of schedule 7, part 8, subpart A. The court held that the 1965 amendment of headnote 1(i) by section 77 of Public Law 89–241, 79 Stat. 933 (Tariff Schedules Technical Amendments Act of 1965), which included electric toothbrushes within the scope of item 750.40, had no retroactive effect respecting the 1963 importation.

It is, of course, fundamental that plaintiff has the burden of establishing not only that the Government's classification is erroneous, but also of establishing that the claimed classification is correct. *United States* v. *L. Batlin & Son, Inc.,* 61 CCPA 17, C.A.D. 1111, 487 F. 2d 916 (1973); *United States* v. *New York Merchandise Co., Inc.,* 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970). However, I am unable to agree with defendant's contention that plaintiff has the burden of negating the possible applicability of tariff provisions other than item 750.40 merely because item 688.40 contains a "not specially provided for" clause. In *Pacific Fast Mail* v. *United States,* 68 Cust. Ct. 41, 49, C.D. 4333, 338 F. Supp. 506 (1972), the court rejected a similar contention by defendant, holding that where the plaintiff has presented a prima facie showing that the Government's classification is erroneous and the claim of the protest is correct, the defendant is charged with the burden of going forward with proof to negate plaintiff's case, either

by showing that plaintiff's proof is insufficient or by proving that a more appropriate alternative provision is applicable. And *cf. L. Batlin & Son, Inc., supra.*

Accordingly, if the Government's classification in this case is proven erroneous, and if plaintiff establishes the applicability of the claimed provision, the burden of proof shifts to defendant to affirmatively establish the propriety of any asserted alternative classification. However, defendant has not asserted any alternative classification in its answer. Consequently, there is no issue concerning any alternative classification before the court.

Since defendant's reliance on rule 10(h) appears to be the pivotal issue respecting the classification, we now consider that aspect of the case. In this connection both parties discuss *Authentic Furniture Products, Inc.* v. *United States,* 61 CCPA 5, C.A.D. 1109 (1973), which appears pertinent here.

In *Authentic Furniture,* a majority of the appellate court applied the "substantially complete" test in holding that an importation of unassembled pieces for wooden bunk beds, which did not include side-rails, was properly duitiable as parts of furniture under item 727.40, TSUS, as modified, rather than as unfinished furniture under item 727.35, as modified, pursuant to rule 10(h). Chief Judge Markey, writing for the majority of the appellate court stated (61 CCPA at 6): "We find no error in the lower court's holding that parts of an article may be classified as the unfinished article itself only when the imported pieces constitute a substantially complete article, albeit in unassembled condition". The majority of the appellate court considered the side-rails to be an essential part of a useable bunk bed, and ruled that "the absence of a substantial or essential part precludes classification as the unfinished article itself" (61 CCPA at 7).

The so-called "dedication to use" test, relied upon by defendant in the present case, was expressly eschewed in the majority's opinion in *Authentic Furniture,* since such test "has been employed only to distinguish, in the sense of the tariff schedules, the status of an unfinished article from the material of manufacture" and "makes no distinction whatsoever between the unfinished article and parts thereof" (61 CCPA at 7).

Following the rationale of *Authentic Furniture,* the issue here relating to rule 10(h) is whether the absent brushes are essential parts of Broxodent electric toothbrushes, as claimed by plaintiff, or "mere accessories", as contended by defendant. This issue should be decided on a factual background which, at present, is insufficiently presented by these cross-motions. Neither a sample of the article in issue nor even a pictorial representation thereof has been submitted to the court. Moreover, the court is presently uninformed as to the facts concerning whether the imports were marketed in the trade and commerce of the

United States as substantially complete toothbrushes, or whether the power units alone are commonly known as toothbrushes or parts of toothbrushes. Plainly, under the rationale of *Authentic Furniture*, the mere disparate value relationship between the power unit and the brush is not a conclusive test as to whether the brush is an essential part or mere accessory of the Broxodent devices, for purposes of rule 10(h). In sum, it is far from clear at this time that the power unit alone "possesses the shape, size, and all of the necessary characteristics of an electric toothbrush" and is "clearly identifiable in its unfinished state as the thing it would be when finished", as claimed by defendant.

Turning now to plaintiff's claim under item 688.40, I must agree with defendant's contention that classification under the claimed provision is ruled out if the power units are "machines" or "parts of apparticular machine or apparatus".

Headnote 1(v) of part 5, schedule 6 reads:
1. This part does not cover—

\* \* \* \* \* \* \*

(v) washing machines, ironing machines, sewing machines, and other machines provided for in parts 4 or 6 of this schedule; \* \* \*

Significantly too, the *Tariff Classification Study* (November 15, 1960), schedule 6, page 308, contains the following explanatory note about item 688.40:

Item 688.40 is the "basket" provision in part 5 for "electrical articles, and electrical parts of articles,". This item does not apply to any article classifiable as a machine and the provision for electrical parts of articles applies to articles identifiable as parts of machinery or apparatus but not as parts of a particular machine or apparatus.

Defendant contends correctly that "plaintiff has failed to show that there exists no triable issue of fact herein with regard to its claim". Plaintiff does not dispute that, as a matter of law, the imports are excluded from item 688.40 if they are "machines" or "parts of a particular machine or apparatus", but on the contrary, argues that "[t]he Government has made no attempt to adduce facts in which the Court can find that the imports or complete electric toothbrushes are machines".

While ultimately the issues relating to the applicability of item 688.40 are questions of law, nevertheless there must exist a factual basis for determination of such questions. In short, while the power units are indisputably electrical articles, the court is unable at this juncture to make the necessary factual determinations from the statements under rule 8.2(b) regarding whether the imports are machines or parts of a particular machine. Therefore, it is apparent that there exists a triable issue of fact relating to plaintiff's claim, as well as to the Government's classification.

As aptly stated by Judge Maletz in *C. J. Tower & Sons of Buffalo, Inc., a/c Metco, Inc.* v. *United States*, 68 Cust. Ct. 377, 379, C.R.D. 72–11, 343 F. Supp. 1387 (1972):

> Where there are cross-motions, the court is under no duty to grant judgment merely because both parties ask for it or are under the belief that there are no factual issues to be tried. [Citations omitted.]

and again at pages 383–384:

> The court, however, is not clairvoyant and will not decide a question of law which turns upon facts that are not of record. A case cannot be precluded from trial simply because "[t]he lawyers for the respective parties, by the cross-motions, superinduced the idea that no factual questions were involved." [Citation omitted.]

To summarize, the unresolved factual issues requiring amplification, without detailing the necessary proofs, are:

1. Whether the brushes (not included in the importation) are essential parts or mere accessories of the power units.

2. Whether the power units are machines or parts of a particular machine or apparatus.

In *Weather-Rite Sportswear Co., Inc.* v. *United States*, 62 Cust. Ct. 373, C.D. 3774, 298 F. Supp. 508 (1969), the undersigned, writing for the First Division, urged the vital necessity for incorporating the desirable procedural remedy of summary judgment in our court rules. There, we cited Mr. Justice Stone's memorable address on "The Common Law of the United States," [4] wherein he discussed innovations and his disfavor with an attitude of narrow literalism. Mr. Justice Stone observed:

> A statute [or rule] is not an alien intruder in the house of the common law, but a guest to be welcomed and made at home there as a new and powerful aid in the accomplishment of its appointed task of accommodating the law to [vital] needs.

Happily, the Customs Court adopted rule 8.2 in 1970, authorizing summary judgment, and the writer stands ready to utilize this constructive procedural tool in appropriate situations—thereby reaching a prompt disposition, and obviating the delay and expense incidental to a trial where there are no real issues of material facts. The court, however, must proceed from the secure hypothesis that there are no justiciable questions of fact. Here, the parties have not yet definitively spelled out the requisite facts at this point. Accordingly, the court is constrained, with the utmost reluctance, to deny the cross-motions, albeit without prejudice to whatever proceedings the parties may wish to pursue.

---

[4] *The Future of the Common Law*, Harvard U. Press, pp. 120, 133–4.